08 CV 6211

# JUDGE KARAS
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

WILLIAM HALLOWELL,

              Plaintiff,

      - against -

THE CITY OF NEW YORK; NEW YORK
CITY POLICE LIEUTENANT WILLIAM
TAYLOR; NEW YORK CITY POLICE
OFFICER HARRY VILLANUEVA, SHIELD
#13620; NEW YORK CITY POLICE OFFICER
BEATTY, and NEW YORK CITY POLICE
OFFICERS JOHN DOES #1-4,

              Defendants.

---

08 Civ. _____(     )

**COMPLAINT AND
DEMAND FOR JURY TRIAL**

---

Plaintiff William Hallowell, by and through his attorneys, Emery Celli

Brinckerhoff & Abady LLP and Steven H. Goldman, Esq., for his Complaint alleges as

follows:

## INTRODUCTION

1.     William Hallowell endured the nightmare of the wrongly accused.

Defendants arrested him for harassment, placed him in handcuffs, detained him for 36

hours and then wrongly prosecuted him for four months based solely on the similarity

between his last name and that of an e-mail address on a message sent to his supervisor at

the library where he worked.

2.     In arresting Mr. Hallowell, Defendants deliberately and maliciously

ignored a mountain of evidence manifestly proving he had nothing to do with the

offending message. They ignored that the e-mail was identified – on its face – as

belonging to *Ben* Hallowell – not *Billy* Hallowell; they ignored the evidence on Mr.

Hallowell's computer that showed he had not sent the message; they ignored the address on the e-mail that did not match his e-mail addresses; they ignored his repeated denials; and they ignored the statements by his family members that such behavior was wholly inconsistent with his personality. Determined to make an arrest – *any* arrest– Defendants bluntly violated Mr. Hallowell's rights by turning a blind eye to the overwhelming evidence of his innocence.

3.      As a result of the shameful false arrest and malicious prosecution inflicted on the Plaintiff by members of the New York Police Department, Mr. Hallowell suffered significant emotional and reputational damages.

## THE PARTIES

4.      Plaintiff Billy Hallowell is a citizen of the United States and at all relevant times was a resident of the County of Bronx, State of New York.

5.      Defendant City of New York ("the City") is a municipality organized and existing under the laws of the State of New York. At all times relevant hereto, the City, acting through the New York Police Department ("NYPD"), was responsible for the policy, practice, supervision, implementation, and conduct of all NYPD matters and was responsible for the appointment, training, supervision, and conduct of all NYPD personnel. In addition, at all relevant times, the City was responsible for enforcing the rules of the NYPD (and regulations of the NYPD patrol guide), and for ensuring that the NYPD personnel obey the laws of the United States and of the State of New York.

6.      At all times relevant hereto, defendant Lieutenant William Taylor was a police officer of the NYPD, acting in the capacity of agent, servant, and employee of the City, and within the scope of his employment as such.

7.    At all times relevant hereto, defendant Police Officer Harry Villanueva was a police officer of the NYPD, acting in the capacity of agent, servant, and employee of the City, and within the scope of his employment as such.

8.    At all times relevant hereto, defendant Police Officer Beatty was a police officer of the NYPD, acting in the capacity of agent, servant, and employee of the City, and within the scope of his employment as such.

9.    At all times relevant hereto, defendants John Doe 1-4 were police officers employed by and/or under the supervision of the New York Police Department, acting in their capacity as agents, servants, and employees of the City of New York, and within the scope of their employment as such (together with Lt. Taylor and Police Officers Villanueva, and Beatty the "Individual Defendants").

## JURISDICTION AND VENUE

10.    This action arises under the Fourth and Fourteenth Amendments to the United States Constitution, 42 U.S.C. §§ 1983 and 1988 and New York state common law.

11.    The jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331, 1343(a)(3) and (4), 1367(a), and the doctrine of pendent jurisdiction.

12.    The acts complained of occurred in the Southern District of New York, and venue is lodged in this Court pursuant to 28 U.S.C. § 1391(b).

13.    This action has been commenced within one year and three months after the happening of the event upon which the claim is based.

## JURY DEMAND

14.    Plaintiff demands trial by jury in this action.

## FACTUAL ALLEGATIONS

22.     William Hallowell, sometimes called "Billy," is 24 years old. He is currently the director of content at VoterWatch, a non-partisan, political non-profit. Mr. Hallowell was an accomplished and dedicated student. He graduated from Hunter in June 2008 with a 3.79 GPA, won the Clark Fellowship (for demonstrated commitment to public interest) and was nominated for the Rhodes Scholarship. As a student, Mr. Hallowell created "Teen Web Online," a website to help teens, organized yearly "Peace Projects," started his own speaking tours, represented inspirational speakers and worked on a variety of other related projects aimed at alleviating violence, discrimination and other social ills that affect youths. Mr. Hallowell continues to pursue these interests and has been invited to events by the World Bank and won numerous other awards for his work.

23.     In April of 2007, Billy had a job as an assistant in the library at the Riverdale Country School, located in the Bronx, New York.

24.     On April 10, 2007, at 10:19 a.m., Robin Berson, a librarian at Riverdale Country School and Billy's supervisor, wrote an e-mail to Billy at the e-mail address "info@pathufind.com" regarding his duties at the library and asking when he would be back at work.

25.     Billy returned the message from the account "Billy@pathufind.com." He explained that he had a family emergency and had been detained in Rochester.

26.     Ms. Berson replied minutes later, discussed possible ways to come into the library on the weekend and suggested that he could also come in the following week.

27.     On April 16, Mr. Hallowell wrote another message to Ms. Berson explaining his schedule. He used the account, "Billy@pathufind.com." In the signature block, he listed two web addresses: "www.pathufind.com." and "www.billyhallowell.com."

28.     On April 17, Billy wrote another e-mail to Ms. Berson resigning from his position citing his ongoing family troubles, the likelihood that he might need to transfer as a result, and his corresponding desire to dedicate more time to his studies. This message was written on the account "Billy@pathufind.com."

29.     On April 18, Billy wrote another e-mail to apologize to Ms. Berson and update his schedule. "I can do my best to come in next week to assist you," he wrote, "and I, depending on what happens may be able to stay on Wed. I am sorry about all of this. I will be in touch." He used the e-mail account, "BillyHallowell@gmail.com."

30.     That same day, Ms. Berson wrote back telling Billy that the library was "not angry," that they were "concerned for" him, and asking him to "keep us posted if you can."

31.     Another librarian at the library, Ann Koshel van Buren, also wrote to Billy that day to "say that I hope that things get better for you. I am grateful for all the help that you did give us here and amazed by your technical prowess. Take care. Be good to yourself." Ms. Van Buren's e-mail was addressed to "BillyHallowell@gmail.com."

32.     On April 19, Ms. Berson – evidently trying to reach Mr. Hallowell – wrote an e-mail to a different person, at a different e-mail address. Instead of writing to Billy Hallowell at one of the two e-mail addresses he had used in corresponding with her, she inexplicably used a third e-mail address: "bhallowell@gmail.com." Billy Hallowell had

never used this address.  Nor had Ms. Berson ever corresponded with him at this address.

Ms. Berson had no reason to believe that this e-mail address belonged to Mr. Hallowell.

33.     On information and belief, there are many people with the name "B.

Hallowell." Even the most cursory internet search reveals at least 70 people publicly

listed and registered as "B. Hallowell" in the United States.

34.     Ms. Berson's e-mail to "bhallowell@gmail.com" stated:

> A few quick items, Billy: 1) Do you remember where you
> stopped doing inventory on your tricoder? 2) If you
> discover that you can indeed come in for a day or two, can
> you give us some warning so that we can adjust our own
> schedules? 3) I've got a time sheet for your but it has no
> date —what was the pay-period end-date, roughly? 4) we
> will need your key back—if you come you can bring it with
> you, but it you're unable to get here, can you send it back
> ot [sic] even just drop it off?  The school security people
> hoard those keys, as you can understand.  I hope you're
> coping.  Let us know how you are.

35.     On or about April 24, 2007, at approximately 1:40 p.m., Ms. Berson

received the following e-mail message from bhallowell@gmail.com, replying to her

message to that same address on April 19:

> I recently lost the key.  But I plan to find it.  I think the
> police have that god damn negro in custody.  As for coping
> I have managed to fall in to [sic] an endless spiraling pit of
> hatred for letting this happen.  I blame only myself and
> have taken the last amount of money I have and spent it on
> women and booze.  I take pleasure in sins of the flesh.  I
> feel so lonely, but with this cash at least tonight I will not
> sleep alone.  With the money I have received from pawning
> off the key I have bought myself a gun.  I have spent many
> hours in quite [sic] contemplation wondering if I am meant
> for this twisted world.  But because I spent most on hookers
> and handle of captain I wasn't able to but ammunition.  So
> that just makes this suck even more.  Now I am too
> depressed to even take my pathetic accuse [sic] for a life.  I
> might [sic] as while [sic] become a teacher...... Oh wait...
> hahaha.  You suck. OMG Hawtness!!  I want your sweet

> body against my skin!...... sry [sic] wrong window. Or was
> it?!?!?! I long for my dick in your mouth, and I know you
> feel the same way. We could do it... in the library?? I
> could spank you with a vintage of finigans [sic] wake [sic]

36.    Ms. Berson's e-mail program identified the sender of this message as **Ben**
Hallowell.

37.    Ben Hallowell is a different name than William Hallowell.

38.    Ben Hallowell is a different name than Billy Hallowell.

39.    Ben Hallowell is a different person than William Hallowell.

40.    Ben Hallowell is a different person than Billy Hallowell.

41.    Anyone in the United States, indeed anyone in the entire world, could
open a Google e-mail account with the address bhallowell@gmail.com

42.    On information and belief, notwithstanding that her e-mail program
identified the sender as "Ben," Ms. Berson contacted the New York City Police
Department and complained that *Billy* Hallowell had sent the April 24 e-mail from the
account "bhallowell@gmail.com."

43.    On April 25, Defendant Police Officers Villanueva and Taylor went to
Plaintiff's apartment and asked to speak with him.

44.    The defendant officers had in their hands the offending April 24 e-mail,
which itself identified it was sent from a person named "Ben" Hallowell, not Billy
Hallowell.

45.    Plaintiff then invited the Defendants into his apartment and proceeded to
show them his e-mail accounts with his own copies of the messages that he had written
back and forth with Ms. Berson earlier that month.  These accounts did not have the

7

message from April 24 from Ms. Berson.  Nor did they have the offending e-mail that caused Ms. Berson to call the police.

46.    Billy informed Defendants that the e-mail address bhallowell@gmail.com did not belong to him.  He repeatedly and vigorously denied sending the April 24 e-mail.

47.    Defendants had a copy of the entire e-mail exchange, and could see both that Mr. Hallowell never himself used bhallowell@gmail.com, and that the objectionable e-mail was sent to Ms. Berson only after she inexplicably sent an e-mail to a stranger with the e-mail address "bhallowell@gmail.com."

48.    Any minimally competent police officer would have realized immediately that the offending e-mail was from a Ben Hallowell, not from Billy Hallowell.

49.    Any minimally competent police officer would have realized immediately that the offending e-mail was sent from "bhallowell@gmail.com," an e-mail address that Ms. Berson, inexplicably, and on her own, wrote to, even though Mr. Hallowell had never once used that e-mail address.

50.    Any minimally competent police officer would have realized immediately that anyone in the entire world could have opened a Google account with the address "bhallowell@gmail.com," and that the odds that plaintiff Mr. Hallowell would just happen to have had the exact same e-mail address that Ms. Berson mistakenly wrote to were almost zero.

51.    Any minimally competent police officer would have realized immediately that there was no probable cause, reasonable suspicion, or any reason whatsoever to detain, much less arrest, Billy Hallowell.

52.     Even though they had in their hands the very evidence that definitely *dis*proved that Billy Hallowell sent the offending e-mail, Defendants decided to arrest him anyway.

53.     Defendants arrested Mr. Hallowell in his home.

54.     On information and belief, Defendants did not have a warrant for Mr. Hallowell's arrest.  Defendants never showed Mr. Hallowell a warrant.  And he was never told he would be arrested until he was placed in handcuffs.

55.     After Defendants handcuffed Mr. Hallowell, they took him to the 50th Precinct.  He was wrongfully arrested, taken in to custody and detained for approximately 36 hours.

56.     While in custody, Mr. Hallowell was repeatedly questioned by Defendants.

57.     Initially, two officers, Villanueva and Taylor, sat with Mr. Hallowell and laid the emails out in sequence.  The officers showed Mr. Hallowell his previous e-mails with Ms. Berson and the final e-mails to and from "bhallowell@gmail.com."  Mr. Hallowell continued to deny that he sent that last e-mail from "bhallowell."  In a subsequent interrogation, Defendant Beatty met with Mr. Hallowell and repeatedly told him he would be found guilty and asked if he had psychological problems.

58.     Defendants questioned Mr. Hallowell and detained him at the Precinct for between four and six hours.

59.     On April 26, 2007, Police Officer Harry Villanueva, Shield #13620, without any basis whatsoever, filed formal criminal charges against Mr. Hallowell of one count of Aggravated Harassment in the Second Degree under P.L. § 240.30(1)(a).

60.     Defendants carelessly recorded Mr. Hallowell's name on his rap sheet as "William H. *Halloway*."

61.     Mr. Hallowell's rap sheet lists his real name – William Hallowell as a "name used by subject," along with William H. Halloway.

62.     Mr. Hallowell has never used the name "Halloway." Defendants had no reason to record his name as Halloway or to indicate that Mr. Hallowell ever used the name Halloway.

63.     Defendants failure to record Mr. Hallowell's correct name on his rap sheet demonstrates their wanton and reckless disregard for the rights of Mr. Hallowell.

64.     At arraignment, near midnight on April 26, the Judge released Mr. Hallowell on his own recognizance. At the time of his release, Mr. Hallowell had been in custody for more than 30 hours.

65.     On April 26, 2007, a local Westchester newspaper, the Journal News, carried a damaging story about the incident and its aftermath. "Visitors were not allowed to enter Farragut Middle School," the article reported, "and students could not leave for a brief period yesterday after school officials received a report of a 'potentially dangerous situation.'" The article went on to state, without qualification, that the lockout was caused by parent who "expressed fear for her daughter's safety because she learned a former colleague of hers at a Bronx private school had a gun." The article stated that "[t]he former colleague had sent an e-mail to another employee of Riverdale Country Day School indicating he was depressed, had bought the gun and was thinking of committing suicide." Finally, the article stated that the "employee shared the e-mail with the Hastings parent, who contacted officials, Hastings police Lt. David Bloomer said."

66.    The next week, on May 3, 2007, The Riverdale Press also published a damaging article about the incident. The article falsely stated that "William Halloway [sic], 23, of Godwin Terrace sent an e-mail to the female employee who works in the library ... [which included statements of] a threatening, sexual nature directed at the current employee." It reported that, according to police reports, Mr. Hallowell "was depressed and owned a gun." It reported that the librarian was "relieved that the e-mailer was apprehended," and that another middle school in the area was "locked-down briefly because of Mr. Halloway's threat." A parent in that school, the article stated, "feared for her daughter's safety when she learned Mr. Halloway had a gun."

67.    Over the next four months, Mr. Hallowell was forced to appear in criminal court on three separate occasions to defend himself against the charges Defendants brought against him. Mr. Hallowell was repeatedly required to take time off from his job to attend these court appearances.

68.    On August 9, 2007, the case against Mr. Hallowell was dismissed in his favor when the District Attorney's office determined there was insufficient evidence to proceed with the prosecution.

69.    As a result of Defendants' above-described conduct, including falsely arresting, falsely imprisoning, and maliciously prosecuting Mr. Hallowell, Mr. Hallowell suffered serious emotional injury, pain and suffering, emotional distress, mental anguish, humiliation and embarrassment.

70.    The arrest, detention, and prosecution of Mr. Hallowell lacked probable cause, and were done maliciously, falsely, and in bad faith. Defendants acted in wanton and reckless disregard for the rights of Mr. Hallowell.

71.    As a direct and proximate result of Defendants' unlawful conduct, Mr. Hallowell has suffered and/or continues to suffer reputational injury, legal expenses, psychological pain, suffering, and mental anguish, professional injury, and other losses.

72.    The City either knew or should have known that the Individual Defendants were prone to unlawful arrests and were likely to engage in such arrests.

73.    The City apparently gave the Individual Defendants no training at all concerning e-mail, the internet, or e-mail/internet crimes.

74.    On July 24, 2007, within ninety days after the claim alleged in this Complaint arose, a written notice of claim was served upon Defendants by personal delivery of the notice, in duplicate, to the Comptroller's office at 1 Centre Street, New York, New York.

75.    At least thirty days have elapsed since the service of the notice of claim, and adjustment or payment of the claim has been neglected or refused.

76.    This action has been commenced within one year and ninety days after the happening of the event upon which the claim is based.

**FIRST CAUSE OF ACTION**
42 U.S.C. § 1983
(Against the Individual Defendants)

77.    Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

78.    By the above, and by arresting and imprisoning Mr. Hallowell without probable cause, unreasonably seizing and searching him, falsely imprisoning him, making false statements under oath in the criminal court complaint against Mr. Hallowell, maliciously prosecuting him, and failing to take steps to intercede and protect Mr.

Hallowell from the above, the Individual Defendants deprived Plaintiff of rights, remedies, privileges, and immunities guaranteed to every citizen of the United States, in violation of 42 U.S.C. § 1983, including, but not limited to, rights guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution.

79.    In addition, the Individual Defendants conspired among themselves to deprive Plaintiff of his constitutional rights secured by 42 U.S.C. § 1983 and by the Fourth and Fourteenth Amendments to the United States Constitution, and took numerous overt steps in furtherance of such conspiracy, as set forth above.

80.    The Individual Defendants acted under pretense and color of state law and in their individual and official capacities and/or within the scope of their respective employments as NYPD officers. Said acts by the Individual Defendants were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers, and said Individual Defendants acted willfully, knowingly, and with the specific intent to deprive Plaintiff of his constitutional rights secured by 42 U.S.C. § 1983, and by the Fourth and Fourteenth Amendments to the United States Constitution.

81.    As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages herein before alleged.

## SECOND CAUSE OF ACTION
### False Arrest and False Imprisonment
### (Against All Defendants)

82.    Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

83.    By the actions described above, the Defendants falsely arrested, falsely imprisoned and detained Mr. Hallowell without reasonable or probable cause, illegally

and without a warrant, and without any right or authority to do so.  The acts and conduct of Defendants were the direct and proximate cause of injury and damage to Mr. Hallowell and violated his common law rights guaranteed to him by the laws of the State of New York.

84.    The City, as the employer of each of the Individual Defendants, is responsible for their wrongdoing under the doctrine of respondeat superior.

85.    As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages hereinbefore alleged.

### THIRD CAUSE OF ACTION
Negligent Hiring, Training, Discipline, and Retention of
Employment Services
(Against The City)

86.    Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

87.    The City, through the NYPD, owed a duty of care to Plaintiff to prevent the abuse sustained by Plaintiff.  Under the same or similar circumstances, a reasonable, prudent, and careful person would have anticipated that an injury to Plaintiff, or to those in a like situation, would probably result from this conduct.

88.    Upon information and belief, the Individual Defendants were unfit and incompetent for their positions as police officers.

89.    Upon information and belief, the City knew or should have known through the exercise of reasonable diligence that the Individual Defendants were likely to make false arrests.

14

90.     Upon information and belief, the City's negligence in hiring, training, disciplining, and retaining the Individual Defendants proximately caused Plaintiff's lasting mental, emotional, reputational, and professional injuries.

91.     Upon information and belief, because of the City's negligent hiring, training, discipline, and retention of the aforementioned Individual Defendants, Plaintiff incurred significant and lasting mental, emotional, reputational, and professional injuries.

### FOURTH CAUSE OF ACTION
Malicious Prosecution
(Against All Defendants)

92.     Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

93.     Defendants maliciously commenced criminal proceedings against Plaintiff, charging him with aggravated harassment in the second degree.

94.     Defendants charged Plaintiff with this crime falsely, maliciously, in bad faith, and without probable cause.

95.     After proceedings in criminal court in which Plaintiff was forced to defend himself, all charges against Plaintiff were terminated in Plaintiff's favor.

96.     Defendants, their officers, agents, servants, and employees were responsible for the malicious prosecution of Plaintiff during this period of time.

97.     Defendant City, which through the Commissioner is the entity responsible for appointing the Individual Defendants, is responsible for their wrongdoing under the doctrine of respondeat superior.

98.     As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages hereinbefore alleged.

WHEREFORE, Plaintiff respectfully requests judgment against

Defendants as follows:

        a.      Compensatory damages in an amount to be determined at trial;

        b.      Punitive damages;

        c.      Reasonable attorneys' fees and costs under 42 U.S.C. § 1988;

        d.      Such other and further relief as this Court may deem just and

proper.

Dated: New York, New York
       July 9, 2007

                      EMERY CELLI BRINCKERHOFF
                      & ABADY LLP

                      STEVEN H. GOLDMAN, Attorney at Law

        By: _____
                      Ilann M. Maazel (IM 5724)
                      O. Andrew F. Wilson (OW 50962)
                      Emery Celli Brinckerhoff & Abady LLP
                      75 Rockefeller Plaza, 20th Floor
                      New York, New York 10019
                      (212) 763-5000

                      Steven H. Goldman
                      903 Sheridan Avenue, 2nd Floor
                      Bronx, New York 10451

                      *Attorneys for Plaintiff William Hallowell*